Kevin Mahoney, Esq. (SBN235367)
kmahoney@mahoney-law.net
Berkeh Alemzadeh (SBN: 324834)
balem@mahoney-law.net
**MAHONEY LAW GROUP, APC**
249 E. Ocean Boulevard, Suite 814
Long Beach, CA 90802
Telephone No.:562-590-5550
Facsimile No.: 562-590-8400

Attorneys for Plaintiff HERMINIO RESENDIZ, as an individual and on behalf of all similarly situated employees

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HERMINIO RESENDIZ, AS AN INDIVIDUAL AND ON BEHALF OF ALL SIMILARLY SITUATED EMPLOYEES,<br><br>PLAINTIFF,<br><br>V.<br><br>SANTA ANA ELKS LODGE-794-BPOE; BENEVOLENT & PROTECTIVE ORDER OF ELKS OF THE USA; AND DOES 1 THROUGH 10, INCLUSIVE,<br>DEFENDANT | Case No.: 8:20-cv-00990-JAK-ADS<br><br>**CLASS ACTION**<br><br>**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Assigned for all purposes to: Hon. John Krondstadt, Courtroom 10B<br><br>Date:       March 18, 2024<br>Time:       8:30 a.m.<br>Courtroom: 10B<br><br>Complaint  Filed: May 28, 2020<br>Trial Date:  None Yet Set |

**TO THE HONORABLE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on March 18, 2024, at 8:30 a.m., in Courtroom 10B of the United States District Court for the Central District of California located at 350 W. 1st Street, Los Angeles, California, Plaintiff, Hermino Resendiz ("Plaintiff"), individually, and on behalf of those similarly situated will, and hereby does, move the Court, pursuant to the Federal Rules of Civil Procedure, Rule 23(e), for an Order granting final approval of the proposed class action settlement between Plaintiff and Defendant Santa Ana Elks Lodge ("SAE" OR "DEFENDANT"), collectively referred to as "the Parties," which is memorialized in the Parties' "Stipulation of Settlement." ("Settlement Agreement" or "Agreement"), which was preliminarily approved by this Court on April 17, 2023. (Dkt. No. 67.)

This motion is based upon (1) this Notice of Motion and Motion; (2) the Memorandum of Points and Authorities in Support of Motion for Final Approval of Class Action Settlement; (3) the Declarations of Kevin Mahoney, Berkeh Alemzadeh and Hermino Resendiz in Support of the Motion; (4) the Declaration of Kevin Lee of Phoenix Class Action Administration Solutions; (5) the Parties' Settlement Agreement; (6) the Notice of Class Action Settlement; (7) the [Proposed] Order Granting Final Approval of Class Action Settlement; (8) the records, pleadings, and papers filed in this Action; and (9) such other documentary and oral evidence or argument as may be presented to the Court at or prior to the hearing of this Motion.

Dated: February 8, 2024          **MAHONEY LAW GROUP, APC**

By:   Kevin Mahoney, Esq.
      Berkeh Alemzadeh, Esq.
      Attorneys for Hermino Resendiz

# TABLE OF CONTENTS

I.   INTRODUCTION ...................................................................................1

II.  FACTUAL AND PROCEDURAL BACKGROUND ....................................2

  A.   The Parties ................................................................................ 2

  B.   The Class Action .......................................................................... 3

  C.   Mediation and Settlement .............................................................. 3

  D.   Discovery and Investigation Informally Conducted by the Parties .............. 4

  E.   Preliminary Approval of the Settlement.......................................... 5

    III.   SUMMARY OF SETTLEMENT TERMS.................................................5

  A.   Monetary Terms ............................................................................ 5

  B.   The Settlement Class and Class Period ............................................ 7

  C.   The Settlement Distribution Formula.............................................. 7

  D.   The Class Release ......................................................................... 8

IV.  THE NOTICE PROCESS ........................................................................9

  A.   Notification to the Class ................................................................ 9

  B.   Request for Exclusion, Objections, and Disputes ....................................... 10

  C.   Total Participating Class Members ..................................................... 10

V.  SETTLEMENT AGREEMENT IS FAIR, REASONABLE, AND

ADEQUATE ..........................................................................................10

  A.   Legal Standards ........................................................................ 10

  B.   Final Confirmation of Class Certification is Appropriate........................... 13

  C.   Final Settlement Approval is Appropriate......................................... 14

    1.   The Settlement is the Product of Arms' Length Negotiations....................14

    2.   The Costs and Risks of Further Litigation Favor Approval of the

    Settlement .................................................................................16

    3.   The Amount of the Settlement Favors Approval .................................17

    4.   The Settlement Provides for Equal Treatment of Class Members..............19

    5.   The Absence of Any Class Member Objection to the Settlement Agreement

    Supports Final Approval..................................................................20

6.   Additional Rule 23(e) Factors ....................................................21

VI.   CONCLUSION ................................................................22

# <u>TABLE OF AUTHORITIES</u>

Page(s)

Cases

*Aftermarket Automotive Lighting Products Antitrust Litigation*
10, 2014, No. 09 MDL 2007-GW(PJWX)),
   2014 WL 12591624................................................................................ 20

*Altamirano v. Shaw Industries, Inc.,*
   (N.D. Cal., July 24, 2015, No. 13-CV-00939-HSG) 2015 WL 4512372 ............ 20

*Atlas v. Accredited Home Lenders Holding Co.*
4, 2009, No. 07-CV-00488-H (CAB)),
   2009 WL 3698393................................................................................ 20

*Balderas v. Massage Envy Franchising, LLC,*
   (N.D. Cal., July 21, 2014, No. 12-CV-06327 NC) 2014 WL 3610945 .............. 19

*Behrens v. Wometco Enterprises, Inc.,*
   (S.D. Fla. 1988) 118 F.R.D. 534 ........................................................... 19b

*Boyd v. Bechtel Corp.,*
   (N.D. Cal. 1979) 485 F.Supp. 610 .......................................................... 21

*Churchill Village, L.L.C. v. General Electric,*
   (9th Cir. 2004) 361 F.3d 566................................................................. 2, 11

*City of Detroit v. Grinnell Corp.,*
   (S.D.N.Y. 1972) 356 F.Supp. 1380......................................................... 19

*Ellis v. Naval Air Rework Facility,*
   (N.D. Cal. 1980) 87 F.R.D. 15................................................................21ha

*Greko v. Diesel U.S.A., Inc.,*
   (N.D. Cal., Apr. 26, 2013, No. 10-CV-02576 NC) 2013 WL 1789602 ............. 17

*Hanlon v. Chrysler Corp.,*
   (9th Cir. 1998) 150 F.3d 1011........................................................ 2, 11, 13, 21

*Harris v. Vector Marketing Corp.*,
   (N.D. Cal., Apr. 29, 2011, No. C-08-5198 EMC) 2011 WL 1627973 ............... 15

*In re Bluetooth Headset Products Liability Litigation*,
   (9th Cir. 2011) 654 F.3d 935.................................................................... 12, 15

*In re Pacific Enterprises Securities Litigation*,
   (9th Cir. 1995) 47 F.3d 373.............................................................................. 21

*In re Zynga Inc. Securities Litigation*,
   (N.D. Cal., Oct. 27, 2015, No. 12-CV-04007-JSC) 2015 WL 6471171 ............. 14

*International Union of Operating Engineers-Employers Const. Industry Pension,
   Welfare and Training Trust Funds v. Karr*,
(9th Cir. 1993) 994 F.2d 1426 ............................................................................... 9

*Linney v. Cellular Alaska Partnership*,
   (9th Cir. 1998) 151 F.3d 1234........................................................................... 19

*Ma v. Covidien Holding, Inc.*,
   (C.D. Cal., Jan. 31, 2014, No. SACV 12-02161-DOC) 2014 WL 360196 .19justic

*Mandujano v. Basic Vegetable Products, Inc.*,
   (9th Cir. 1976) 541 F.2d 832............................................................................. 20

*Mora v. Harley-Davidson Credit Corp.*,
   (E.D. Cal., Jan. 3, 2014, No. 1:08-CV-01453-BAM) 2014 WL 29743............... 17

*National Rural Telecommunications Cooperative v. DIRECTV, Inc.*,
   (C.D. Cal. 2004) 221 F.R.D. 523 ................................................................. 11, 20

*Officers for Justice v. Civil Service Com'n of City and County of San Francisco*,
   (9th Cir. 1982) 688 F.2d 615...................................................... 11, 12, 13, 17, 18

*Rodriguez v. West Publishing Corp.*,
   (9th Cir. 2009) 563 F.3d 948.......................................................................... 14, 21

*Staton v. Boeing Co.*,
   (9th Cir. 2003) 327 F.3d 938............................................................................. 11

*Thieriot v. Celtic Ins. Co.*,
   2011 WL 1522385 (N.D. Cal. April 21, 2011) ............................................. 17

4

*Velazquez v. International Marine and Industrial Applicators, LLC*
9, 2018, No. 16CV494-MMA (NLS)),
    2018 WL 828199 .................................................................................. 16

Statutes

California Business & Professions Code §§17200 ...................................... 9

Rules

Federal Rules of Civil Procedure, Rule 23 ...................................... Passim

TABLE OF CONTENTS AND AUTHORITIES

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff Hermino Resendiz ("Plaintiff") submits this memorandum in support of his unopposed Motion for Final Approval of Class Action Settlement ("Motion"). The proposed settlement reached by Plaintiff and Defendant Santa Anal Elks Lodge-794-BPOE (referred to herein as "Defendant") (Plaintiff and Defendant are referred to collectively as the "Parties"), as memorialized in the Parties' Class Action Settlement Agreement and Class Notice ("Settlement Agreement"), is fair, adequate, and reasonable, and thus warrants final approval, for the reasons provided herein.

## I.    INTRODUCTION

The Parties hereto have reached a settlement in this matter, which is subject to the final approval of this Court. Plaintiff requests that the Court grant final approval of the Parties' Settlement Agreement, pursuant to Rule 23, subdivision (e) of the Federal Rules of Civil Procedure. The original settlement, a non-reversionary settlement, in the amount of four hundred fifty thousand dollars ($450,000.00) is "fair, reasonable, and adequate" within the meaning of Rule 23(e). The settlement provided for an escalator clause, should the class size increase, which was triggered thus making the Gross Settlement Amount five hundred twelve thousand seven hundred four dollars and ninety-two cents ($512,704.92) The Class includes one hundred thirty-nine (139) employees, comprised of all current and former non-exempt employees employed by Defendant within the state of California at any time from April 20, 2016 through April 17, 2023 (the "Class Period"). Class Members stand to recover substantial and immediate monetary benefits under the settlement with an average estimated Gross Recovery of three thousand two thousand ninety-five dollars and ten cents ($2,095.10) per Settlement Class Member. (Declaration of Kevin Lee ("Lee Decl.") ¶ 14.)

The settlement is in line with the strength of Class Members' claims given

the risk, expense, complexity, and likely duration of further litigation, including the risks of establishing liability, proving damages at trial and on appeal, and the risks of securing and maintaining class action status throughout the trial and on appeal. (*See Churchill Village, L.L.C. v. General Electric* (9th Cir. 2004) 361 F.3d 566, 575–76 (citing *Hanlon v. Chrysler Corp.* (9th Cir. 1998) 150 F.3d 1011, 1026). It is uncertain whether Plaintiff would have ultimately been able to certify and maintain the case as a class action, and to have prevailed on liability for the Class through summary judgment, at trial, and on appeal. Weighing the risks, time, and expense of continued litigation against the substantial benefits afforded now by the proposed settlement, Class Counsel represents that the proposed settlement is in the best interest of the Class.

In connection with requesting final settlement approval, Plaintiff also requests that the Court: (1) confirm as final the certification of the Class under Federal Rules of Civil Procedure, rule 23, 28 U.S.C.A.(a) and 23(b)(3); (2) confirm as final the appointment of Plaintiff as the class representative of the Class; and (3) enter the proposed final approval order and enter judgment. Plaintiff also requests the Court award Class Counsel's requested attorneys' fees and costs in a separate motion filed concurrently herewith. Finally, while the settlement is not contingent upon any service payment, Plaintiff requests the Court award a service payment to compensate Plaintiff for his service to, and risks taken on behalf of, the Class, as provided in a separate motion filed concurrently herewith.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Parties

Defendant is a fraternal organization firm charged with inculcating the principles of charity, justice, brotherly love and fidelity…promoting the welfare and enhance the happiness of its Members.

Plaintiff and the Class Members are all current and or former non-exempt employees employed by Defendant in within the state of California at any time from May 28, 2016 to April 17, 2023.

### B.    The Class Action

On May 28, 2020, Plaintiff filed a his class action complaint, which alleged various violations of the labor code, including, but not limited to (1) violation of the Fair Labor Standards Act (29 U.S.C.A. § 206 and 207 (West)); (2) violation of Lab. Code, § 226.7, 512 (Meal Period Violations); (3) violation of Lab. Code, § 226.7, Wage Order 9 (Rest Period Violations); (4) violation of Lab. Code, § 204, 510, 1194 (Failure to Pay All Wages, Including Minimum Wage and Overtime); (5) violation of Lab. Code, § 201, 202, 203 (Failure to Pay Wages Due at Separation of Employment); (6) violation of Lab. Code, § 226, subd. (a) and € (Failure to Issue Accurate Itemized Wage Statements); (7) violation of Lab. Code, § 2802 (Failure to Reimburse Business Expenses); and (8) violation of Bus. & Prof. Code, § 17200 et seq. (Unfair Business Practices) ("Action") (Case No. 8:20-cv-00990-JAK-ADS (DKT. 1.) On June 7, 2022, Plaintiff filed a First Amended Complaint to add a cause of action for violation of the California Private Attorneys General Act. (DKT. 39.)

On August 19, 2020, Defendant filed an Answer to Plaintiff's Complaint in which it denied Plaintiff's allegations and asserted fifty-seven (57) affirmative defenses. (DKT 11.) Defendant denies all of Plaintiff's allegations in the complaint and the theories of liability upon which this case was asserted. Defendant asserted affirmative defenses to each of the causes of action asserted therein.  (Declaration of Kevin Mahoney ("Mahoney Decl.") ¶¶ 4, 10.)

### C.    Mediation and Settlement

On November 12, 2021, the Parties attended a full day of mediation with Mark LeHocky, Esq., a well-known and experienced wage and hour class action mediator. While the case did not settle at mediation, subsequently, following a

mediator's proposal, the Parties agreed to the principal terms of this Settlement, which were subsequently formalized as a written "Stipulation of Settlement" ("Settlement Agreement" or "Agreement"), fully executed by the Parties on August 26, 2022. (See Mahoney Decl. ¶ 11, Exhibit A). At all times, the negotiations leading to the Settlement Agreement have been adversarial, non-collusive, and at arm's length. (Mahoney Decl. ¶ 11.)

### D. Discovery and Investigation Informally Conducted by the Parties

Prior to the mediation, the Parties engaged in informal discovery as a means of minimizing litigation costs, as well as fostering a cooperative dynamic ahead of the substantive negotiations. Defendants provided Plaintiff with a random sampling of thirty percent (30%) of documents, including, but not limited to, time, and pay records for the putative class, Defendants' written policies and handbooks, and identified the number of employees comprising the putative class and/or aggrieved employees, as well as the relevant total workweeks and pay periods. (Mahoney Decl. ¶ 5.)

Using the aforementioned information and records, Plaintiff and his counsel consulted with an expert and were able to reasonably assess liability on the part of Defendants and the resulting value of damages, paving the way for the proposed settlement terms.  (Mahoney Decl. ¶ 7.)

Plaintiff and his counsel determined that the mediator proposal and agreed-upon sum of four hundred fifty thousand dollars ($450,000.00)[1] was a reasonable and appropriate gross settlement value for this instant action, however, the Gross Settlement Amount has increased to five hundred twelve thousand seven hundred four dollars and ninety-two cents ($512,704.92). (Mahoney Decl. ¶ 11.). Accordingly, Class Counsel maintains that this settlement is fair, adequate, and reasonable. (Mahoney Decl. ¶¶ 14–15.)

---

[1]  The Settlement Agreement included an "escalator clause," which was subsequently triggered thus increasing the Gross Settlement Amount to five hundred twelve thousand seven hundred four dollars and ninety-two cents ($512,704.92)

### E. Preliminary Approval of the Settlement

On April 17, 2023, the Court granted the unopposed Motion for Preliminary Approval of the Class Action Settlement. (Dkt. No. 67.) Therein, the Court determined that the Settlement Agreement is "fair, just, and reasonable and, therefore, meet the requirements for preliminary approval…" (Dkt. No. 67, ¶ IV(B).) The Court further found that, "for settlement purposes only, the requirements of Federal Rules of Civil Procedure, Rule 23(a) and (b) are satisfied." (Dkt. No. 67, ¶ IV(A).) The Court conditionally certified, for settlement purposes only, a "Class" consisting of the following:

> all non-exempt, hourly-paid employees, currently and/or formerly employed by Defendant in the State of California during the Class Period at any time on or between May 28, 2016 through the date of preliminary approval of this settlement by the Court (the "Class Period"). The Settlement Class as defined are limited to the non-exempt employees located at Santa Ana Elks Lodge-794-BPOE only. (Dkt. No. 67, ¶ III.)

## III.    SUMMARY OF SETTLEMENT TERMS

### A. Monetary Terms

In consideration for the releases of all claims at issue, Defendant agrees to pay four hundred fifty thousand dollars ($450,000.00) which was subsequently increased five hundred twelve thousand seven hundred four dollars and ninety-two cents ($512,704.92)[2] (the "Gross Settlement Amount"), excluding Defendant's side of payroll taxes (which Defendant will pay separately), as a full and complete settlement of all claims arising from the action by the Class. The Gross Settlement Amount shall be allocated as follows:

1. Settlement administration costs to Phoenix Class Action Administration Solutions shall not exceed seven thousand dollars ($7,000.00). The Parties have allocated up to eight thousand dollars ($8,000.00) for costs of

---

[2]  The Settlement Agreement included an "escalator clause," which was subsequently triggered thus increasing the Gross Settlement Amount to five hundred twelve thousand seven hundred four dollars and ninety-two cents ($512,704.92)

administration. However, the actual cost of settlement administration is five thousand seven hundred ninety-seven dollars and fifty cents ($5,797.50);

2. A requested fee of up to one hundred forty thousand dollars ($140,000.00) of the Gross Settlement Amount. Plaintiff's counsel seeks an increase of the attorney's fees by fifteen thousand six hundred seventy-six dollars ($15,676.00), which is approximately twenty-five percent (25%) of the increase ($62,704.92) to the Gross Settlement Amount for a total of one hundred fifty-five thousand six hundred seventy-six dollars ($155,676.00). Class Counsel litigation costs not to exceed eight thousand dollars ($8,000.00). Attorneys' actual costs in the amount of five thousand seven hundred ninety-seven dollars and fifty cents ($5,797.50) are requested by Class Counsel to be paid from the GSA. The remaining amount of two thousand two hundred two dollars and fifty cents ($2,202.50) will become part of the Net Settlement Amount for distribution to Participating Class Members;

3. A requested Enhancement Payment for Plaintiff as Class Representative in the amount of five thousand dollars ($5,000.00); and

4. Fifty thousand dollars ($50,000.00) from the Gross Settlement Amount to compromise of claims brought under the Private Attorneys General Act of 2004, Lab. Code, § 2698 et seq. Lab. Code, § 2699(i), requires that the parties distribute any settlement of PAGA claims as follows: 75% to the State of California's Labor Workforce Development Agency for enforcement of labor laws and education of employers; and 25% to "aggrieved employees." Accordingly, the Parties agree that thirty-seven thousand five hundred dollars ($37,500.00) of the LWDA PAGA Allocation will be paid to the Labor Workforce Development Agency from the Gross Settlement Fund by the Claims Administrator. The remaining twelve thousand five hundred ($12,500.00) of the LWDA PAGA Allocation will be part of the Net Settlement Fund to be distributed in accordance with the terms of this Settlement.

6

The Parties further agreed that the Gross Settlement Amount is non-reversionary. As such, one hundred percent (100%) the Net Settlement Amount will be paid to Class Members without the need to submit a claim.

## B. The Settlement Class and Class Period

The settlement class is comprised of all non-exempt employees currently and formerly employed by Defendant in the State of California during the Class Period.  The Class Period is from May 28, 2016 to April 17, 2023.

## C. The Class Settlement Distribution Formula

The Net Settlement Amount shall be apportioned among Participating Class Members based on each of their respective number of Workweeks worked during the Class Period. The Settlement Administrator will calculate the Workweeks for each Participating Class Member. The Settlement Administrator will calculate a Final Workweek Value from the Net Settlement Amount for each Settlement Class Member by dividing the respective Workweeks by the total Workweeks worked by Participating Class Members. (Mahoney Decl., Ex. A, section 4 – Settlement Payment, B.)

Based on the estimated Net Settlement Amount of approximately two hundred eighty-seven thousand twenty-eight dollars and ninety-two cents ($287,028.92), the average payment to Participating Class Members will be two thousand ninety-five dollars and ten cents ($2,095.10). (Lee Decl. ¶ 13-14) This recovery on behalf of Class Members is well in excess of amounts that have been approved on the low end of the range of wage and hour settlements in California state and federal courts. (*See, e.g., Sorenson v. PetSmart, Inc.,* No. 2:06-CV-02674-JAM-DAD (E.D. Cal.) (average net recovery of approximately $60); *Lim v. Victoria's Secret Stores, Inc.*, No. 04CC00213 (Orange County Super. Ct.) (average net recovery of approximately $35); *Gomez v. Amadeus Salon, Inc.*, No. BC392297 (L.A. Super. Ct.) (average net recovery of approximately $20); *Delgado v. New Albertson's, Inc.*, No. SACV08-806 DOC-RBNx (CD. Cal.)

(average net recovery of approximately $45.)

### D. The PAGA Settlement Formula

The individual PAGA Amount shall be apportioned among aggrieved employees based on each of their respective number of Workweeks worked during the PAGA Period. The Settlement Administrator will calculate the Workweeks for each aggrieved employee. The Settlement Administrator will calculate a Final Workweek Value from the Net Settlement Amount for each aggrieved employee by dividing the respective Workweeks by the total Workweeks worked by aggrieved employees. (Mahoney Decl., Ex. A.)

Based on the estimated fifty-thousand-dollar ($50,000.00) LWDA PAGA Allocation, ($37,500.00 to the LWDA & $12,500.00 to the 107 aggrieved employees), the average payment to Participating aggrieved employees will be one hundred sixteen dollars and eighty-two cents ($116.82). (Lee Decl. ¶ 15.)

### E. The Class and FLSA Release

In exchange for the consideration set forth in this Settlement Agreement, Representative Plaintiff and each Settlement Class Member who does not validly opt-out, on behalf of him or herself, and on behalf of all those who claim by and through the Settlement Class Member or in his or her stead, including, but not limited to heirs, spouses, executors, administrators, attorneys, agents, representatives, predecessors, successors and assigns, does hereby and forever release, acquit, and discharge, and covenant not to sue Defendants, including its past and present divisions, related entities, parents, subsidiaries, joint ventures, predecessors, successors, members, assigns, and their respective shareholders, owners, officers, agents, administrators, fiduciaries, beneficiaries, subrogees, executors, partners, and privies (collectively the "Released Parties" and each a "Released Party") from liability for the following claims, which are being released for the time period May 28, 2016, to the Effective Date. (Mahoney Decl., Ex. A, §3(A)).

The release provided in the Settlement Agreement is directly related to Plaintiff's claims and are therefore appropriate. (*See International Union of Operating Engineers-Employers Canst. International Union of Operating Engineers-Employers Const. Industry Pension, Welfare and Training Trust Funds v. Karr* (9th Cir. 1993) 994 F.2d 1426, 1430 ("res judicata bars not only all claims that were actually litigated, but also all claims that 'could have been asserted' in the prior action").

### F. The PAGA Release

Representative Plaintiff and Aggrieved Employees: All claims and causes of action alleged or that could have been alleged based on the facts set forth in the Plaintiffs' notice to the LWDA, Lawsuits and operative complaints on file in the Actions against Defendants.  These claims include, but are not limited to the following Labor Code §§ 201, 202, 203, 204, 226, 226.3, 226.7, 510, 512, 515, 558, 1174, 1174.5, 1182.12, 1194, 1197, 28021 and violation of Labor Code §§ 2698-2690 (Private Attorney General Act); as well as any and all other claims that are and/or were asserted in or that could have been asserted based on the facts set forth in the notice to the LWDA, and operative Complaint on file in the Action against Defendants. ("Released Claims"). (Mahoney Decl., Ex. A, §3 (B)).

## IV.    THE NOTICE PROCESS

### A. Notification to the Class

On April 17, 2023, the Court appointed Phoenix Class Action Administration Solutions ("Phoenix") as the Settlement Administrator pursuant to the terms of the Settlement Agreement and to carry out the Settlement according to the terms of the Settlement Agreement. (Dkt. No. 67.) On November 21, 2023, Phoenix mailed the Notice Packet via U.S. first class mail to all one hundred thirty-nine (139) Class Members on the Class List. (Lee Decl., ¶ 5, Ex. A.)

As of February 7, 2024, ten (10) Notice Packets had been returned to Phoenix.  (Lee Decl. ¶ 6.)  For the ten (10) Notices returned from the Post Office

without a forwarding address, Phoenix attempted to locate a current mailing address using TransUnion TLOxp, one of the most comprehensive address databases available for skip tracing. Of the ten (10) Notices that were skip traced, four (4) updated addresses were obtained and the Notices were promptly re-mailed to those Class Members via first class mail.  (Lee Decl. ¶ 6.)   As of February 7, 2024, six (6) Notice Packets remain undeliverable since an updated address could not be obtained via skip trace.  (Lee Decl. ¶ 7.)

### B. Request for Exclusion, Objections, and Disputes

The deadline for Class Members to submit an Opt-Out, Notice of Objection, and or Workweek dispute was January 5, 2024. (Lee Decl., ¶¶ 8–10). As of January 12, 2024, Phoenix received two (2) Opt-Out, zero (0) Notices of Objection, and zero (0) Workweek disputes. (Lee Decl., ¶¶ 8–10).

### C. Total Participating Class Members

There are one hundred thirty-seven (137) Class Members who did not submit timely and valid Requests for Exclusion and are therefore deemed Settlement Class Members, representing 98.6% of the Class. Settlement Class Members have worked a collective total of nine thousand five hundred eighteen (9,518) workweeks during the Class Period. Each Workweek is valued at approximately thirty dollars and sixteen cents ($30.16). (Lee Decl. ¶ 11).

## V.  SETTLEMENT AGREEMENT IS FAIR, REASONABLE, AND ADEQUATE

### A. Legal Standards

Rule 23(e) of the Federal Rules of Civil Procedure provides that "claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval. Fed. Rules Civ. Proc., rule 23, 28 U.S.C.A.(e). The requirements of Rule 23(e) set forth the procedures for approval of class action settlements. First, the court must direct notice in a reasonable manner to all Class Members who would be bound by the settlement. Fed. Rules

Civ. Proc., rule 23, 28 U.S.C.A.(e)(1). Class Members should be given the opportunity to opt-out of the settlement and to object to the settlement. Fed. Rules Civ. Proc., rule 23, 28 U.S.C.A.(e)(4)-(5). A court may only approve a binding settlement after a hearing, and on finding that the settlement is fair, reasonable, and adequate. Fed. Rules Civ. Proc., rule 23, 28 U.S.C.A.(e)(2).

A court must engage in a two-step process to approve a proposed class action settlement. First, the court must determine whether the proposed settlement deserves preliminary approval. (*National Rural Telecommunications Cooperative v. DIRECTV, Inc.* (C.D. Cal. 2004) 221 F.R.D. 523, 525.) This step has already been completed here, as the Court preliminarily approved the settlement on March 21, 2023. (*See* Order Granting Preliminary Approval of Class Action Settlement, ECF Dkt. No. 67.)

Second, after notice is given to Class Members, a court must determine whether final approval is warranted. (*National Rural Telecommunications Cooperative*, *supra*, 221 F.R.D. at p. 525.) To grant final approval, the court must find that the proposed settlement is fair, adequate, and reasonable. (*See Staton v. Boeing Co.* (9th Cir. 2003) 327 F.3d 938, 959 (citing *Hanlon*, *supra*, 150 F.3d at p. 1026).) In making this determination, the court may consider any or all of the following factors:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill Village, L.L.C.*, *supra*, 361 F.3d at p. 575; *Officers for Justice v. Civil Service Com'n of City and County of San Francisco* (9th Cir. 1982) 688 F.2d 615, 625; *Hanlon*, *supra*, 150 F.3d at p. 1026. This list is not exhaustive, and

"[t]he relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice*, *supra*, 688 F.2d at p. 625. Where a settlement is reached prior to formal class certification, courts also look for signs of collusion or other conflicts of interest. (*See In re Bluetooth Headset Products Liability Litigation* (9th Cir. 2011) 654 F.3d 935, 946–47.)

Under recent amendments to the Federal Rules of Civil Procedure, district courts must also consider a list of factors delineated in Rule 23(e)(2), which bear similarities to the Ninth Circuit's longstanding factors and considerations:

(2) Approval of the Proposal. If the proposal would bind Class Members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats Class Members equitably relative to each other.

The Advisory Committee recognizes that federal "[c]ourts have generated lists of factors" to decide the fairness, reasonableness, and adequacy of a settlement, and that "each circuit has developed its own vocabulary for expressing these concerns." Fed. Rules Civ. Proc., rule 23, 28 U.S.C.A.(e)(2) Advisory Committee's Notes to 2018 Amendments. In recognizing these, the Advisory Committee explained that it did not intend to "displace any factor [used by federal courts], but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *Id*. As such, to the extent possible, the Court should apply the factors listed in Rule 23(e)(2) through the lens of the Ninth Circuit's factors and existing relevant precedent. The Court should also take heed of the Advisory Committee's warning not to let "[t]he sheer number of factors…distract both the court and the parties from the central concerns that bear on review under Rule 23(e)(2)." *Id*.

Despite the importance of fairness, the Court must also be mindful of the Ninth Circuit's policy favoring settlement, particularly in class actions. (*See, e.g., Officers for Justice*, *supra*, 688 F.2d at p. 625 ("[V]oluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation").) While balancing all of these interests, the Court's inquiry is ultimately limited "to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties." (*Ibid.*) "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." (*Hanlon*, *supra*, 150 F.3d at p. 1026.) "Settlement is the offspring of compromise; the question…is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." (*Id.* at p. 1027.)

## B. Final Confirmation of Class Certification is Appropriate

The Court preliminarily certified the Class for settlement purposes under

Rule 23 of the Federal Rules of Civil Procedure, appointed Plaintiff as the representative for the Class, and appointed Plaintiff's attorneys as Class Counsel. (Dkt. No. 67.) The Court found, for purposes of settlement, that the Class meets all of the requirements under Rule 23(a) and Rule 23(b)(3) to maintain this Action as a class action. The deadline for opting out of, or objecting to, the Settlement Agreement was January 5, 2024.

For these reasons, and for the reasons set forth in the Motion for Preliminary Approval of Class Action Settlement (Dkt. No. 54), the Court should confirm the certification of this action as a settlement class action and the appointment of Plaintiff as the Class Representative.

### C. Final Settlement Approval is Appropriate

#### 1. The Settlement is the Product of Arms' Length Negotiations

As discussed more extensively in the Parties' Motion for Preliminary Approval of Class Action Settlement (Dkt. No. 54), as well as in Plaintiff's Motion for Attorney's Fees ("Fees Motion") concurrently filed herewith, (1) Class Counsel are highly experienced in class action wage and hour litigation; (2) Plaintiff and Defendant conducted informal discovery and investigation that allowed Class Counsel to act intelligently in negotiating and recommending the settlement; and, (3) the Parties arrived at the settlement through arms-length bargaining involving competent and experienced counsel, and only after a full day of mediation with an experienced mediator. (*See Rodriguez v. West Publishing Corp.* (9th Cir. 2009) 563 F.3d 948, 965 ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution, and have never prescribed a particular formula by which that outcome must be tested.") (citations omitted); *In re Zynga Inc. Securities Litigation* (N.D. Cal., Oct. 27, 2015, No. 12-CV-04007-JSC) 2015 WL 6471171, at *9 (holding that the parties' use of mediator and the fact that significant discovery had been conducted "support the

conclusion that the Plaintiff was appropriately informed in negotiating a settlement"); *Harris v. Vector Marketing Corp.* (N.D. Cal., Apr. 29, 2011, No. C-08-5198 EMC) 2011 WL 1627973, at *8 (noting that the parties' use of a mediator "suggests that the parties reached the settlement in a procedurally sound manner and that it was not the result of collusion or bad faith by the parties or counsel.")

Finally, none of the "subtle signs of collusion" that the Ninth Circuit has warned of are present here. (*See e.g. In re Bluetooth Headset Products Liability Litigation*, *supra*, 654 F.3d at p. 947.) Class Members will be receiving monetary distribution commensurate with their pro rata share of the Gross Settlement Amount, and based upon the number of Workweeks they have worked for Defendant. (Mahoney Decl., Ex. A, paragraph 4, section (B), titled Settlement Payment Procedures.) Further, Class Counsel will be applying for a percentage of the common fund fee award in an amount not to exceed one-third (1/3) of the Gross Settlement Amount to compensate them for the services they have rendered on behalf of the Settlement Class Members. (See generally, Motion for Attorneys' Fees and Costs.) The award of attorneys' fees is separate from the approval of the Settlement. Moreover, there is no indication of a "clear sailing" arrangement, or an arrangement for unawarded fees to revert to Defendant rather than the Class Members. (Mahoney Decl., Ex. A, paragraph 4, section (C), titled Settlement Payment Procedures.) The Settlement is not a claims-made settlement. It is an all-in, non-reversionary settlement. Upon the occurrence of the Effective Date, no Defendant, Releasee, or any other person or entity who, or which, paid any portion of the Settlement shall have any right to the return of the Gross Settlement Amount or any portion thereof for any reason whatsoever. As such, this factor weighs in favor of final approval.

/ / /

/ / /

### 2.  The Costs and Risks of Further Litigation Favor Approval of the Settlement

The Court must "balance the continuing risks of litigation (including the strengths and weaknesses of the Plaintiff's case), with the benefits afforded to members of the Class, and the immediacy and certainty of a substantial recovery." *Velazquez v. International Marine and Industrial Applicators, LLC* (S.D. Cal., Feb. 9, 2018, No. 16CV494-MMA (NLS)) 2018 WL 828199, at *4.)

Plaintiff is convinced of the strengths of his claims. However, Defendant is equally adamant about the strength of its defenses. Plaintiff's claims and Defendant's defenses give rise to a number of critical, disputed factual and legal issues that go to the core of Plaintiff's claims and theories of liability and, by extension, to Plaintiff's entitlement to recover damages and penalties, and/or the proper measure of damages.

As is set forth in greater detail in the Motion for Preliminary Approval and the Declarations filed in support thereof (Dkt. No. 54), while this is a strong case for class certification and for maintaining class status through trial, there is a risk that Plaintiff and the Class would not prevail on the merits should this case proceed to trial. At the very least, litigating these issues would require additional costly and complicated discovery, summary judgment practice, and, in all likelihood, trial. Whether Plaintiff would prevail remains uncertain, and appeals would almost certainly follow any ruling by this Court.

By contrast, the Settlement provides excellent recoveries to class members now without that uncertainty and delay. In Class Counsel's extensive experience litigating similar cases, Class Counsel understands and appreciates the risks and uncertainties facing the claims of Plaintiff and the Class, which weigh in favor of settlement approval. Whatever the strength of the claims, Plaintiff nonetheless faces numerous obstacles to recovery, including likely challenges to the use of representative testimony and expert witnesses to establish class-wide liability and

aggregate damages, challenges to Plaintiff's methodology for calculating damages and penalties, and having to defeat Defendant's defenses. It is especially true here where Defendant denies liability, and when a party continues to deny liability, there is an inherent risk in continuing litigation. In *Thieriot v. Celtic Ins. Co.,* 2011 WL 1522385 at \*5 (N.D. Cal. April 21, 2011), the district court approved a settlement agreement in which the defendant specifically denied liability, noting that such denial of liability illustrated the risk to continued litigation. *See also Mora v. Harley-Davidson Credit Corp.* (E.D. Cal., Jan. 3, 2014, No. 1:08-CV-01453-BAM) 2014 WL 29743, at \*4 (granting final approval to settlement agreement where defendant denied any liability); *Cf. Greko v. Diesel U.S.A., Inc.* (N.D. Cal., Apr. 26, 2013, No. 10-CV-02576 NC) 2013 WL 1789602, at \*4 ("[E]ven with a strong case, litigation entails expense.")

Further, despite the suitability of this matter for class treatment, the litigation regarding class certification would also have been expensive and time-consuming. Assuming the Court certified a class action for trial, Defendant could have appealed from a class certification order, which may have delayed the proceedings considerably and been very costly. Additionally, if this case had proceeded to trial, the time and expenses associated with trial preparation would have been considerable. A class action trial in this case would be manageable, but it would also be complex, expensive, and extremely time-consuming. Even if Plaintiff obtained a favorable verdict and judgment on his claims, Plaintiff and the Class would face additional expenses and delay if, as is likely, Defendant were to appeal. Taken together, these considerations support approval of the settlement.

### 3. The Amount of the Settlement Favors Approval

The Court must weigh the risk to Plaintiff against the value of the Settlement. *Officers for Justice*, *supra*, 688 F.2d at p. 625. The previous Settlement provided for a four hundred fifty thousand dollars ($450,000.00) Gross Settlement Amount which has now increased to five hundred twelve thousand

seven hundred four dollars and ninety-two cents ($512,704.92), and no less than two hundred eighty seven thousand twenty-eight dollars and ninety-two cents ($287,028.92) Net Settlement Amount once the Administration costs, litigation costs requested, PAGA allocation, attorneys' fees requested, and service award requested have been deducted. Class Counsel requests attorneys' fees of one hundred fifty-five thousand six hundred seventy-six dollars ($155,676.00). Class Counsel also seeks reimbursement of five thousand seven hundred ninety-seven dollars and fifty cents ($5,797.50) in litigation expenses incurred by Class Counsel.

As stated in the Declaration of Kevin Mahoney in support of Plaintiff's preliminary approval (Dkt. No. 55, Mahoney Dec. ¶ 25), it is estimated that the reasonable value for all claims is approximately six hundred eighty-four thousand four hundred sixty-five dollars ($684,465.00) (excluding attorneys' fees, interest, and cost). The previous Gross Settlement Amount of four hundred fifty thousand dollars ($450,000.00)[3] represented approximately 65% of the reasonable value of the case which is fair and reasonable (Dkt. No. 55, Mahoney Dec. ¶ 25),), however the Gross Settlement Amount is now five hundred twelve thousand seven hundred four dollars and ninety-two cents ($512,704.92). (Mahoney Decl., ¶ 15.) Accordingly, Class Counsel maintains that this settlement is fair, adequate, and reasonable. (Mahoney Decl., ¶ 15.)

The Settlement is substantial, especially as its adequacy must be judged as "a yielding of absolutes and an abandoning of highest hopes [...] Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the Parties each give up something they might have won had they proceeded with litigation[.]" *Officers for Justice*, *supra*, 688 F.2d at p. 624 (citation omitted). Accordingly, the Settlement is not to be judged

---

[3]  The Settlement Agreement included an "escalator clause," which was subsequently triggered thus increasing the Gross Settlement Amount to five hundred twelve thousand seven hundred four dollars and ninety-two cents ($512,704.92)

against a speculative measure of what might have been achieved. *Linney v. Cellular Alaska Partnership* (9th Cir. 1998) 151 F.3d 1234, 1242. Courts have routinely determined that class settlements, like the one reached here, are reasonable even where Plaintiff recovers only a portion of their total potential recovery. *See e.g., Behrens v. Wometco Enterprises, Inc.* (S.D. Fla. 1988) 118 F.R.D. 534, 542 "[T]he fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate."] Indeed, "[a] settlement can be satisfying even if it amounts to a hundredth or even - a thousandth of a single percent of the potential recovery." *Ibid.*; see also *City of Detroit v. Grinnell Corp.* (S.D.N.Y. 1972) 356 F.Supp. 1380, 1386; *Ma v. Covidien Holding, Inc.* (C.D. Cal., Jan. 31, 2014, No. SACV 12-02161-DOC) 2014 WL 360196, at \*5 (finding a settlement worth 9.1% of the total value of the action "within the range of reasonableness"); *Balderas v. Massage Envy Franchising, LLC* (N.D. Cal., July 21, 2014, No. 12-CV-06327 NC) 2014 WL 3610945, at \*5 (granting preliminary approval of a net settlement amount representing 5% of the projected maximum recovery at trial). In addition, the Court should consider that the Settlement provides for payment to the Class now, rather than a speculative payment many years down the road. *See City of Detroit*, *supra*, 495 F.2d at p. 463.

Therefore, the five hundred twelve thousand seven hundred four dollars and ninety-two cents ($512,704.92)[4] Gross Settlement Amount is well within the range of reasonableness, and this factor weighs in favor of final approval.

### 4. The Settlement Provides for Equal Treatment of Class Members

The settlement proposed by the Parties reflects no significant indication of preferential treatment. As described in the Settlement Agreement:

The Settlement Administrator shall divide the Net Settlement

---

[4] Id.

Amount by the total number of Workweeks Participating Class Members worked during the Class Period to determine the amount each Participating Class Member is entitled to for each workweek he or she was employed by Defendant (the "Weekly Amount") during the Class Period. The Settlement Administrator will multiply the Weekly Amount by the estimated total number of workweeks that each Participating Class Member worked during the Class Period. The product of each calculation represents the Gross Individual Class Settlement Payment for the respective Participating Class Member.

*See, e.g.*, *Altamirano v. Shaw Industries, Inc.* (N.D. Cal., July 24, 2015, No. 13-CV-00939-HSG) 2015 WL 4512372, at *8 (finding no preferential treatment because the settlement "compensates class members in a manner generally proportionate to the harm they suffered on account of [the] alleged misconduct"). As the settlement proposed by the Parties reflects no significant indication of preferential treatment, this factor weighs in favor of final approval.

## 5.  The Absence of Any Class Member Objection to the Settlement Agreement Supports Final Approval

To date, no class members have objected to the Settlement. "[T]he absence of any objections to the Settlement Agreement among Class Members supports final approval." *In re Aftermarket Automotive Lighting Products Antitrust Litigation* (C.D. Cal., Jan. 10, 2014, No. 09 MDL 2007-GW(PJWX)) 2014 WL 12591624, at *3. Even in cases where objections are made, it is recognized that a small number of objections indicates a favorable class reaction. *See National Rural Telecommunications Cooperative*, *supra*, 221 F.R.D. at p. 526 (holding that "in the absence of a large number of objections to a proposed class action settlement, settlement actions are favorable to the class members."); *Atlas v. Accredited Home Lenders Holding Co.* (S.D. Cal., Nov. 4, 2009, No. 07-CV-00488-H (CAB)) 2009 WL 3698393, at *4 (recognizing that only two class members submitted objections to the plan of allocation in deciding to approve the plan of allocation); *see also Mandujano v. Basic Vegetable Products, Inc.* (9th Cir.

1976) 541 F.2d 832, 837.

### 6. Additional Rule 23(e) Factors

The judgment of experienced counsel regarding the settlement is entitled to great weight. *Hanlon*, *supra*, 150 F.3d at p. 1026; *Boyd v. Bechtel Corp.* (N.D. Cal. 1979) 485 F.Supp. 610, 622; *Ellis v. Naval Air Rework Facility* (N.D. Cal. 1980) 87 F.R.D. 15, 18.) Reliance on such recommendations is premised on the fact that "parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez*, *supra*, 563 F.3d at p. 967 (quoting *In re Pacific Enterprises Securities Litigation* (9th Cir. 1995) 47 F.3d 373, 378).) Here, counsel for both Parties endorse the Settlement as fair, adequate, and reasonable. Plaintiff's Counsel and Defendant's counsel each have extensive experience in prosecuting and litigating class action wage and hour suits like this one.

Further, as discussed in the contemporaneously filed Motion for Class Representative Service Payment, Attorneys' Fees, and Reimbursement of Costs and Expenses, the proposed attorneys' fees of up to one-third ($1/3^{rd}$) of the Gross Settlement Amount is reasonable in light of the risk involved in this litigation, the work performed by Class Counsel, and the fact that there were no objections to this amount. Moreover, approval of the requested attorneys' fees is separate from approval of the Settlement, and the Settlement may not be terminated based on a ruling regarding attorneys' fees. (Mahoney Decl., Ex. A; see also Plaintiff's Fees Motion.) The fact that qualified and well-informed counsel endorse the Settlement as being fair, reasonable, and adequate heavily favors this Court's approval of the Settlement.

/ / /

/ / /

/ / /

/ / /

## VI.    CONCLUSION

The Parties have negotiated a fair and reasonable settlement of the claims that meet the requirements of final approval pursuant to Rule 23, subdivision (e) of the Federal Rules of Civil Procedure. The Parties thereby request that the Court (1) grant final approval of the Settlement, and (2) grant final class certification and class action designation of the Settlement.


Dated: February 8, 2024                    **MAHONEY LAW GROUP, APC**



                                           By:    _____
                                                  Kevin Mahoney, Esq.
                                                  Berkeh Alemzadeh, Esq.
                                                  Attorneys for Plaintiff Hermino
                                                  Resendiz as an individual and on
                                                  behalf of all similarly situated
                                                  employees